1  JOEL D. SIEGEL (Bar No. 155581)
   joel.siegel@dentons.com
2  POOJA L. SHAH (Bar No. 330550)
   pooja.l.shah@dentons.com
3  DENTONS US LLP
   601 South Figueroa Street, Suite 2500
4  Los Angeles, California 90017-5704
   Tel: (213) 623-9300 / Fax: (213) 623-9924
5
6  BRIAN P. BAGGOTT (*Pro Hac Vice* filed)
   brian.baggott@dentons.com
6  MICHAEL P. PAPPAS (*Pro Hac Vice* filed)
   michael.pappas@dentons.com
7  DENTONS US LLP
   4520 Main Street, Suite 1100
8  Kansas City, MO 64111-770
   Tel: (816) 460-2400 / Fax: (816) 531-7545
9
10 Attorneys for Defendants
   DINE BRANDS GLOBAL, INC., and
11 APPLEBEE'S RESTAURANTS, LLC

12              **UNITED STATES DISTRICT COURT**

13            **NORTHERN DISTRICT OF CALIFORNIA**

14

15

16 MICHELLE CLARK, individually and on behalf     Case No. 4:24-cv-04679-YGR
   of all others similarly situated,
17                                                **DEFENDANTS DINE BRANDS
              Plaintiff,                          GLOBAL, INC., AND APPLEBEE'S
18                                                RESTAURANTS LLC'S NOTICE OF
        v.                                        MOTION TO COMPEL
19                                                ARBITRATION, OR IN THE
   DINE BRANDS GLOBAL, INC., and                  ALTERNATIVE, DISMISS PURSUANT
20 APPLEBEE'S RESTAURANTS, LLC,                    TO FED. R. CIV. P. 12(b)(6);
                                                  MEMORANDUM OF POINTS AND
              Defendants.                         AUTHORITIES IN SUPPORT OF
21                                                THEREOF

22                                                Date:  December 3, 2024
                                                  Time: 2:00 p.m.
23                                                Judge: Hon. Yvonne Gonzalez Rogers
                                                  Crtrm: 1, Oakland Courthouse
24
                                                  Complaint Filed:  August 1, 2024
25

26

27

28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

- 1 -

1    **TO PLAINTIFF AND HER ATTORNEYS OF RECORD:**

2    **PLEASE TAKE NOTICE THAT** on December 3, 2024 at 2:00 p.m., or as soon thereafter

3    this matter may be heard, in Courtroom 1, Ronald V. Dellums Federal Building & United States

4    Courthouse, 1301 Clay Street, Oakland, CA 94612, before the Honorable Yvonne Gonzalez

5    Rogers, Defendants Dine Brands Global, Inc., and Applebee's Restaurants, LLC, will, and hereby

6    does move the Court for an order compelling this case to arbitration pursuant to the parties'

7    contractual agreement, or in the alternative, for an order dismissing Plaintiff's Complaint in its

8    entirety for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

9        This Motion is based on this Notice of Motion and Motion, Memorandum of Points and

10   Authorities, the Declaration of Jason Suarez and all exhibits thereto, all documents in the Court's

11   file, and on such other argument as may be presented to the Court.

12

13    Dated:  October 1, 2024                              Respectfully submitted,

14                                                          DENTONS US LLP

15

16                                                          By: */s/  Joel D. Siegel*
                                                                Joel D. Siegel
17                                                              Pooja L. Shah
                                                                Brian P. Baggott
18                                                              Michael P. Pappas

19                                                          Attorneys for Defendants
                                                            DINE BRANDS GLOBAL, INC., and
20                                                          APPLEBEE'S RESTAURANTS, LLC

21

22

23

24

25

26

27

28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

NOTICE OF MOTION AND MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO COMPEL ARBITRATION

# TABLE OF CONTENTS

**Page**

MEMORANDUM OF POINTS AND AUTHORITIES .............................................................. 10

I.      INTRODUCTION ................................................................................................... 10

II.     FACTUAL BACKGROUND & SUMMARY OF ALLEGATIONS ............................ 11

III.    LEGAL STANDARD ............................................................................................. 14

IV.     ARGUMENT ......................................................................................................... 15

        A.      Plaintiff Agreed to and is Bound by the Terms, Including the Arbitration
                Clause. ...................................................................................................... 15

                1.      Defendants Provided Reasonably Conspicuous Notice of the Terms ....... 16

                2.      The Context of the Transaction Confirms Plaintiff was on Notice of
                        the Terms ......................................................................................... 18

                3.      Plaintiff Unambiguously Assented to the Terms. ................................... 18

        B.      The Arbitration Clause Covers this Dispute. ................................................ 19

        C.      The Arbitration Clause is Valid and Enforceable. ......................................... 20

                1.      The Arbitration Clause is Not Procedurally Unconscionable. ................. 20

                2.      The Arbitration Clause is Not Substantively Unconscionable ................. 21

        D.      Arbitration May not Proceed on a Class-Wide Basis. ................................... 22

V.      ALTERNATIVELY, THIS CASE SHOULD BE DISMISSED PURSUANT TO
        FED. R. CIV. P. 12(B)(6) ....................................................................................... 23

        A.      Legal Standard for Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6). ................ 23

        B.      Plaintiff Fails to Plausibly Allege a Reasonable Consumer Would be
                Misled by the Service Fee. ......................................................................... 24

        C.      Plaintiff Fails to Otherwise State a Claim Under The CLRA. ............................ 26

        D.      Plaintiff's Fraudulent Misrepresentation Claim Fails as a Matter of Law. ........... 27

        E.      Plaintiff Fails to Allege the Required Elements to Assert a Claim for
                Unjust Enrichment/Quasi-Contract. ............................................................. 28

        F.      Plaintiff's Complaint Lacks the Specificity Required by Fed. R. Civ. P.
                9(b). ......................................................................................................... 29

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

NOTICE OF MOTION AND MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO COMPEL ARBITRATION

1

VI.    CONCLUSION ................................................................................................ 30

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

NOTICE OF MOTION AND MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO COMPEL ARBITRATION

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009) ...................................................................................................23

*Associated Gen. Contractors of California v. California State Council of*
　*Carpenters*,
　459 U.S. 519 (1983) ...................................................................................................23

*AT&T Mobility LLC v. Concepcion*,
　563 U.S. 333 (2011) ..............................................................................................22, 23

*Bell Atl. Corp. v. Twombly*,
　550 U.S. 544 (2007) ...................................................................................................23

*Berman v. Freedom Fin. Network, LLC*,
　30 F.4th 849 (9th Cir. 2022).................................................................................17, 18

*Bly-Magee v. California*,
　236 F.3d 1014 (9th Cir. 2001)....................................................................................29

*Brennan v. Opus Bank*,
　796 F.3d 1125 (9th Cir. 2015)....................................................................................14

*Carter v. Rent-A-Ctr., Inc.*,
　718 F. App'x 502 (9th Cir. 2017) ...............................................................................22

*Chabolla v. ClassPass Inc.*,
　No. 4:23-CV-00429-YGR, 2023 WL 4544598 (N.D. Cal. June 22, 2023) .................15, 16, 17

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
　207 F.3d 1126 (9th Cir. 2000).....................................................................................15

*City of Oakland v. Oakland Raiders*,
　83 Cal. App. 5th 458 (2022)........................................................................................28

*Comet Theatre Enterprises, Inc. v. Cartwright*,
　195 F.2d 80 (9th Cir.1952)..........................................................................................29

*Concat LP v. Unilever*,
　PLC, 350 F. Supp. 2d 796 (N.D. Cal. 2004) ..............................................................19

*Cornejo v. Spenger's Fresh Fish Grotto*,
　No. C 09-05564 MHP, 2010 WL 1980236 (N.D. Cal. May 17, 2010)........................21

Dentons US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
213 623 9300

NOTICE OF MOTION AND MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO COMPEL ARBITRATION

*Davenport v. Nvidia Corp.*,
No. 23-cv-01877-PCP, 2024 WL 832387 (N.D. Cal. Feb. 28, 2024)........................22

*Dean Witter Reynolds, Inc. v. Byrd*,
470 U.S. 213 (1985) ........................14

*Dimond v. Darden Restaurants, Inc.*,
No. 13 Civ. 5244(KPF), 2014 WL 3377105 (S.D.N.Y. July 9, 2014)....................25

*Dinosaur Dev., Inc. v. White*,
216 Cal. App. 3d 1310 (1989) ........................29

*Ebner v. Fresh, Inc.*,
838 F.3d 958 (9th Cir. 2016) ........................24

*Epic Sys. Corp. v. Lewis*,
584 U.S. 497 (2018) ........................22

*Ghazizadeh v. Coursera, Inc.*,
No. 23-cv-05646-EJD, 2024 WL 3455255 (N.D. Cal. June 20, 2024)....................19

*In re Gilead Scis. Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008) ........................23

*Ham v. Hain Celestial Grp., Inc.*,
70 F. Supp. 3d 1188 (N.D. Cal. 2014) ........................28

*Hoffman v. 162 North Wolfe LLC*,
228 Cal. App. 4th 1178 (2014)........................28

*Holt v. Noble House Hotels & Resort, Ltd*,
370 F. Supp. 3d 1158 (S.D. Cal. 2019) ........................27

*Hooper v. Jerry Ins. Agency, LLC*,
675 F. Supp. 3d 1027 (N.D. Cal. 2023) ........................17

*Janda v. T-Mobile, USA, Inc.*,
No. C 05-03729 JSW, 2009 WL 667206 (N.D. Cal. Mar. 13, 2009) ....................25

*Kaplan v. Athletic Media Co.*,
705 F. Supp. 3d 992 (N.D. Cal. 2023) ........................18, 20, 21

*Karim v. Best Buy Co.*,
No. 22-cv-04909-JST, 2023 WL 3801909 (N.D. Cal. June 2, 2023) ....................16

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009)........................27, 29

*Keebaugh v. Warner Bros. Ent. Inc.*,
100 F.4th 1005 (9th Cir. 2024)........................15, 18

NOTICE OF MOTION AND MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO COMPEL ARBITRATION

*Lag Shot LLC v. Facebook, Inc.*,
   No. 21-CV-01495-JST, 2021 WL 2660433 (N.D. Cal. June 25, 2021) ................................22

*Lee v. DoNotPay, Inc.*,
   683 F. Supp. 3d 1062 (C.D. Cal. 2023) ..........................................................................19

*Lim v. TForce Logistics, LLC*,
   8 F.4th 992 (9th Cir. 2021) ...........................................................................................20

*Loewen v. Lyft, Inc.*,
   129 F. Supp. 3d 945 (N.D. Cal. 2015) ...........................................................................21

*McGinity v. Procter & Gamble Co.*,
   69 F.4th 1093 (9th Cir. 2023) .......................................................................................24

*Meyer v. Uber Techs., Inc.*,
   868 F.3d 66 (2d Cir. 2017) ...................................................................................18, 19

*Moyer v. Chegg, Inc.*,
   No. 22-cv-09123-JSW, 2023 WL 4771181 (N.D. Cal. July 25, 2023) ........................15

*Navarro v. Block*,
   250 F.3d 729 (9th Cir. 2001) .......................................................................................23

*Oberstein v. Live Nation Ent., Inc.*,
   60 F.4th 505 (9th Cir. 2023) ...................................................................................16, 18

*Optimum Prods. v. Home Box Off.*,
   839 F. App'x 75 (9th Cir. 2020) ...................................................................................19

*PETA v. Whole Foods Mkt. California, Inc.*,
   No. 15-cv-04301 NC, 2016 WL 362229 (N.D. Cal. Jan. 29, 2016) ...........................29

*Peter v. DoorDash, Inc.*,
   445 F. Supp. 3d 580 (N.D. Cal. 2020) ..........................................................................17

*Peterson v. Cellco P'ship*,
   164 Cal.App.4th 1583 (2008) .......................................................................................29

*Poublon v. C.H. Robinson Co.*,
   846 F.3d 1251 (9th Cir. 2017) ...............................................................................20, 22

*Quezada v. Franklin Madison Grp.*,
   LLC, No. 19cv2153-LAB (DEB), 2020 WL 5819824 (S.D. Cal. Sept. 29,
   2020) ..........................................................................................................................25

*Regan v. Pinger, Inc.*,
   No. 20-CV-02221-LHK, 2021 WL 706465 (N.D. Cal. Feb. 23, 2021) ........................19

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

*Searle v. Wyndham Internat., Inc.*,
   102 Cal. App. 4th 1327 (2002).................................................................................25

*Sellers v. JustAnswer LLC*,
   73 Cal. App. 5th 444 (2021)............................................................................16, 18

*Smith v. Spizzirri*,
   601 U.S. 472 (2024)..............................................................................................15

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001).................................................................................23

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007).................................................................................30

*Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*,
   315 F. Supp. 3d 1147 (C.D. Cal. 2018).................................................................23

*Unilab Corp. v. Angeles-IPA*,
   244 Cal. App. 4th 622 (2016).................................................................................28

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003).................................................................................29

*Walker v. USAA Cas. Ins. Co.*,
   474 F. Supp. 2d 1168 (E.D. Cal. 2007).................................................................28

*Watson v. Crumbl LLC*,
   No. 2:23-cv-01770-DJC-CKD, 2024 WL 3010880 (E.D. Cal. June 10, 2024) .......................26

*Wayne v. Staples, Inc.*,
   135 Cal. App. 4th 466 (2006).................................................................................25

*Williams v. Apple, Inc.*,
   449 F. Supp. 3d 892 (N.D. Cal. 2020) ..................................................................29

*Williams v. Gerber Prod. Co.*,
   552 F.3d 934 (9th Cir. 2008).................................................................................24

**Statutes**

9 United States Code
   § 2..........................................................................................................................14

California Business and Professions Code
   § 17200...............................................................................................................10, 24
   § 17500, *et seq.* ...............................................................................................10, 24

NOTICE OF MOTION AND MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO COMPEL ARBITRATION

California Civil Code
   § 1750, *et seq.* ................................................................................10
   § 1755 ................................................................................................27
   § 1761 .........................................................................................26, 27
   § 1770 ................................................................................................24
   § 1770(a) ............................................................................................26
   § 1770(a)(9) .......................................................................................26
   § 1770(a)(20) .....................................................................................26

**Rules and Regulations**

Federal Rules of Civil Procedure
   Rule 9(b) ......................................................................................27, 29
   Rule 12(b)(6) ...............................................................................23, 30

NOTICE OF MOTION AND MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO COMPEL ARBITRATION

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Put simply, this dispute belongs in arbitration.  When she decided to create a Club Applebee's account, Plaintiff Michelle Clark ("Plaintiff") expressly agreed to Defendants Dine Brands Global, Inc.'s ("Dine Brands"), and Applebee's Restaurants, LLC's (collectively, "Defendants") Terms of Use and valid and binding arbitration clause.  In defiance of her agreement to arbitrate, Plaintiff filed this putative class action, alleging Defendants charged a fraudulent service fee to consumers placing delivery orders.  *See* Class Action Complaint ("Compl."). However, because Plaintiff affirmatively agreed to arbitrate her claims, and the arbitration clause is enforceable and encompasses her claims, this matter must be resolved exclusively through that process.  Accordingly, Defendants respectfully request that the Court grant this motion and compel Plaintiff to arbitrate her claims in accordance with the clear and binding arbitration agreement to which she assented.

In the alternative, the Court should dismiss Plaintiff's Complaint with prejudice.  At its core, the allegations in this case amount to a simple question: whether Defendants properly disclosed an 11% service fee charged by a third-party delivery provider for delivery orders placed on the Applebee's website and mobile ordering application.  Plaintiff's own allegations produce a simple answer: Defendants conspicuously disclosed the fee and the amount ***before*** the customer completed her purchase by displaying at checkout a line item titled "Service Fee," along with an "i" button customers could press if they wanted to know the specific percentage (11%) of the service fee. Plaintiff expressly admits these facts in her Complaint.  Despite this clear and conspicuous disclosure, Plaintiff alleges she and putative class members were misled into believing Defendants did not charge a service fee.  Plaintiff's own allegations bar such a theory.

First, Plaintiff has failed to adequately allege a claim under the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA"), the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.* ("FAL"), or the California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL").  Under California law, a reasonable consumer is expected to act reasonably under the circumstances, and a reasonable consumer making a purchase

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

NOTICE OF MOTION AND MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO COMPEL ARBITRATION

1   where a "Service Fee" is explicitly disclosed ***prior to payment*** would have no option but to see and

2   understand a defendant was charging a service fee.  Moreover, because the alleged service fee was

3   plainly disclosed to consumers prior to payment, it allows consumers to decide whether to continue

4   with their purchase in light of the service fee.

5        Second, Plaintiff cannot succeed on her claim for fraudulent misrepresentation because she

6   cannot show any consumer—acting reasonably—would be misled by the "Service Fee," and the

7   claim is not pled with particularity subject to Fed. R. Civ. P. Rule 9(b).  Finally, Plaintiff's unjust

8   enrichment/quasi-contract claim is barred because unjust enrichment is not an independent tort in

9   California, and her quasi-contract claim is barred because Plaintiff cannot prove Defendants

10  retained a benefit through some sort of unjust expense upon her.

11  ## II.    FACTUAL BACKGROUND & SUMMARY OF ALLEGATIONS

12        Dine Brands is the ultimate parent company of the franchisor of the Applebee's

13  Neighborhood Grill & Bar® branded restaurants.  Declaration of Jason Suarez ("Suarez Decl.), ¶ 1.

14  Plaintiff alleges that Defendants operate the online services offered on the Applebee's website,

15  www.applebees.com.  Compl. ¶ 1.  Through this website, customers are offered the option of

16  placing takeout and/or delivery orders.  *Id*., ¶ 4.  Customers can also create a Club Applebee's

17  account.  Suarez Decl., ¶¶ 3-4.  Most recently, on October 27, 2023, Plaintiff created a Club

18  Applebee's account using the email address "michelleclark[###]@gmail.com," which she

19  subsequently used to place delivery orders.  *Id*., ¶ 5.  The website page Plaintiff viewed when she

20  created her account appeared as follows:

21

22

23

24

25

26

27

28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

*Id.*, ¶ 6.

As shown above, to create her account Plaintiff entered her contact and other personal information, and the address associated with Plaintiff's account is in San Leandro, CA, the same city she lists as her residence in the Complaint. *Id.* Plaintiff was then notified that "[b]y signing up [she] agree[d] to the Terms of Use" (the "Notice"). *Id.*, ¶ 7. The Notice appeared in dark font, which contrasted with the webpage's white background. *Id.* The words "Terms of Use" appeared in red font and were hyperlinked to Defendants' Terms of Use (the "Terms").[1] *Id.*, ¶ 8. If Plaintiff hovered her cursor over the hyperlink, the cursor would change to a hand pointer, the standard functionality for hyperlinks. *Id.* After being presented with the Notice, Plaintiff selected "Create Account" at the bottom of the page and thus, agreed to the Terms. *Id.*, ¶ 9.

The very Terms Plaintiff agreed to expressly state that they constitute a binding legal agreement between Plaintiff and "Dine Brands Global, Inc., and its subsidiaries and affiliates (collectively, 'Dine Brands,' 'us,' 'our,' and 'we') governing [Plaintiff's] access to and use of the websites and online services that Dine Brands operates and that link to these Terms (collectively, the 'Site' or 'Sites')."[2] Terms, § 1.1. The beginning of the Terms also notified Plaintiff they

---

[1] A copy of the Terms as of October 27, 2023, are attached to the Suarez Decl. as Exhibit B.

[2] The Terms and the valid and binding arbitration clause contained therein are applicable to both

NOTICE OF MOTION AND MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO COMPEL ARBITRATION

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

1    contained "**A BINDING ARBITRATION CLAUSE AND CLASS ACTION WAIVER THAT**

2    **AFFECT YOUR RIGHTS FOR RESOLVING ANY DISPUTE WITH US (SECTION 13)**."

3    *Id.*, § 1.2.

4        The referenced Section 13 contained the arbitration clause (the "Arbitration Clause"), which

5    stated as follows:

6        **Binding Arbitration.** If you and Dine Brands do not resolve any
         dispute by informal negotiation or in small claims court, any other

7        effort to resolve the dispute will be conducted exclusively by
         individual confidential binding arbitration governed by the Federal

8        Arbitration Act ("FAA"). Class arbitrations are not permitted. You
         are giving up the right to litigate disputes in court before a judge or

9        jury (or participate in court as a party or class member). Instead, all
         disputes will be resolved before a neutral arbitrator, whose decision

10       will be final except for a limited right of appeal under the FAA. You
         will have a reasonable opportunity to participate in the process of

11       choosing an arbitrator. Any court with jurisdiction over the parties

12       may enforce the arbitrator's award.

13   *Id.*, § 13.3.  "Dispute" is defined as

14       any dispute, action, or other controversy between you and
         [Defendants] *arising out of or in connection* with these Terms

15       (including without limitation our Privacy Policy) and/or your use of
         the Site, whether in contract, warranty, tort, statute, regulation,

16       ordinance, or any other legal or equitable basis.

17   *Id.*, § 13 (emphasis added).  Further, under the Terms, "dispute" is to be given "the broadest possible

18   meaning allowable under law."  *Id.*

19       The Terms also include a class-action waiver, providing:

20       Any proceedings to resolve or litigate any dispute in any forum will be
         conducted solely on an individual basis. Neither you nor Dine Brands will

21       seek to have any dispute heard as a class action, Private Attorneys General
         Act action, or in any other proceeding in which either party acts or proposes

22       to act in a representative capacity. No arbitration or other proceeding will
         be combined with another without the prior written consent of all parties to

23       all affected arbitrations or proceedings.

24   *Id.*, § 13.4.

25       The Terms provide that an arbitration may be commenced with Judicial Arbitration and

26   Mediation Services Inc. ("JAMS") pursuant to its rules and procedures, including its Consumer

27   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

28   Dine Brands and Applebee's Restaurants LLC because Applebee's Restaurants LLC is a
     subsidiary of Dine Brands.  *See* Suarez Decl. ¶ 1; *see also* Dkt. 13.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

NOTICE OF MOTION AND MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO COMPEL ARBITRATION

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

1    Arbitration Minimum Standards, before a single arbitrator in Plaintiff's county of residence or Los

2    Angeles, County. *Id.*, § 13.5. For an arbitration commenced by Plaintiff, "the only fee required to

3    be paid is an initial case management fee which is approximately equivalent to current court filing

4    fees." *Id.*, § 13.6. "All other costs will be borne by [Defendants]." *Id.* The Terms further provide

5    that, notwithstanding the agreement to arbitrate, Plaintiff may alternatively bring actions in small

6    claims court. *Id.*, § 13.7.

7         Despite Plaintiff's assent to the Terms, including the Arbitration Clause, Plaintiff filed this

8    lawsuit on August 1, 2024. *See* Compl. Plaintiff asserts claims for violation of California's

9    Consumers Legal Remedies Act, False Advertising Law, Unfair Competition Law and fraudulent

10   misrepresentation and unjust enrichment based on her assertion that Defendants charged online

11   consumers a fraudulent service fee.[3] *Id.*

12   ### III.   LEGAL STANDARD

13        The Federal Arbitration Act ("FAA"), which governs arbitration agreements such as the

14   one here, provides that arbitration clauses "shall be valid, irrevocable, and enforceable, save upon

15   such grounds as exist at law or in equity for the revocation of any contract[.]" 9 U.S.C. § 2. The

16   FAA "leaves no place for the exercise of discretion by a district court, but instead mandates []

17   district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration

18   agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)

19   (emphasis in original).

20        In determining whether to grant a motion to compel arbitration, courts "must determine two

21   gateway issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether

22

23   [3] Plaintiff claims to have ordered delivery from "Applebee's Website and Applebee's App on
     multiple occasions, most recently in December 2023." Compl., ¶ 11. When placing delivery
24   orders, Plaintiff alleges she "was unaware that she was paying an 11 percent Service Fee separate
     from the expected delivery fee and required taxes." *Id.*, ¶ 12. She claims that had she "been made
25   aware of the Service Fee prior to ordering, she would not have purchased a delivery order from
     Defendants." *Id.*, ¶ 14. Yet despite claiming she would not have purchased a delivery order had
26   she been made aware of the service fee, Plaintiff concedes the 11 percent service fee was disclosed
     *before* she completed and provided payment for any order. *Id.*, ¶ 25 and Figure 2. Nor does Plaintiff
27   allege Defendants advertised that it did not charge a service fee, or that Defendants made any other
     express representations on its website, application, or in-store that would lead a reasonable
28   consumer to conclude Defendants did not charge a service fee. *See generally id.*

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

1    the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015)

2    (quotations omitted).  "If the response is affirmative on both counts, then the [FAA] requires the

3    court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho*

4    *Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).  Once a court determines that an

5    arbitration clause is enforceable and applies to pending claims, "§3 of the FAA compels the court

6    to stay the proceedings." *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024).

7    **IV.    ARGUMENT**

8          **A.    Plaintiff Agreed to and is Bound by the Terms, Including the Arbitration
9                  Clause.**

10         By creating a Club Applebee's account, Plaintiff affirmatively agreed to arbitrate her

11   claims.  To determine whether an agreement to arbitrate has been reached, federal courts "appl[y]

12   ordinary state-law principles that govern contract formation." *Moyer v. Chegg, Inc.*, No. 22-cv-

13   09123-JSW, 2023 WL 4771181, at *4 (N.D. Cal. July 25, 2023).  To form a contract under

14   California law, "there must be actual or constructive notice of the agreement and the parties must

15   manifest mutual assent." *Id.* (quotations omitted).[4]

16         The manner in which Plaintiff was presented the Terms is referred to as a "modified

17   clickwrap agreement" or "sign-in wrap agreement," which means Plaintiff was "notified of the

18   existence of the website's terms of use and advise[d] [] that by making some type of affirmative

19   act … she [] agree[d] to the terms of service." *Id.*  These types of agreements are enforceable where

20   "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will

21   be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that

22   unambiguously manifests his or her assent to those terms." *Keebaugh v. Warner Bros. Ent. Inc.*,

23   100 F.4th 1005, 1014 (9th Cir. 2024) (quotations omitted).  In weighing the conspicuousness of a

24   notice, the Court must also consider "the full context of the transaction" because it is "***critical*** to

25   determining whether a given textual notice is sufficient to put an internet consumer on inquiry

26   _____

27   [4] Given Plaintiff's numerous claims under California law, it is Defendants' understanding that
     Plaintiff does not dispute the application of California law.  Regardless, under any conceivable
28   choice-of-law analysis, California law must apply because it is the law of the forum and the Terms
     require application of California law.  Terms, § 14.2.

1   notice of contractual terms." *Chabolla v. ClassPass Inc.*, No. 4:23-cv-00429-YGR, 2023 WL

2   4544598, at *5 (N.D. Cal. June 22, 2023) (quoting *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th

3   444, 453 (2021)) (emphasis in original).

**1.      Defendants Provided Reasonably Conspicuous Notice of the Terms.**

5          The organization of the Applebee's website and design elements provided Plaintiff with

6   reasonably conspicuous notice of the Terms.  To be reasonably conspicuous, "a notice must be

7   displayed in a font size and format such that the court can fairly assume that a reasonably prudent

8   Internet user would have seen it." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 515 (9th Cir.

9   2023).  To resolve this question, courts consider "1) the size of the text; 2) the color of the text as

10  compared to the background it appears against; 3) the location of the text and, specifically, its

11  proximity to any box or button the user must click to continue use of the website; 4) the obviousness

12  of any associated hyperlink; and 5) whether other elements on the screen clutter or otherwise

13  obscure the textual notice." *Chabolla*, 2023 WL 4544598 at *4 (quoting *Sellers*, 73 Cal. App. 5th

14  at 473).

15         Here, the Notice appears in standard size with legible, dark font.  It contrasts clearly with

16  the webpage's white background.  The Notice is located immediately above the large, red "Create

17  Account" button, all of which is separated from the rest of the page by a perforated line.  This

18  design draws attention to and emphasizes the Notice and effect of creating an account.  Within the

19  Notice, the phrase "Terms of Use" are presented in red font, making the existence of a hyperlink

20  obvious to Plaintiff.  Additionally, if Plaintiff hovered her cursor over the hyperlink, a hand pointer

21  would appear, further emphasizing the existence of a hyperlink.  Finally, the webpage is uncluttered

22  and presents a simple and easy flow, culminating with presentation of the Notice immediately

23  before Plaintiff decided to create an account.

24         Courts consistently find almost identical notices to be reasonably conspicuous.  *See*

25  *Oberstein*, 60 F.4th at 516 (finding reasonably conspicuous notice where various notices were

26  "displayed directly above or below the action button" and the terms of use hyperlink was

27  "conspicuously distinguished from the surrounding text in bright blue font, making its presence

28  readily apparent"); *Karim v. Best Buy Co.*, No. 22-cv-04909-JST, 2023 WL 3801909, at *3 (N.D.

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

Cal. June 2, 2023) (finding reasonably conspicuous notice, despite plaintiff's characterization of the notice's font as "grey undifferentiated print," because the notice's "dark text contrast[ed] clearly with the white background" and the hyperlink containing the terms of use was "in blue with no other emphasis"); *Hooper v. Jerry Ins. Agency, LLC*, 675 F. Supp. 3d 1027, 1035-36 (N.D. Cal. 2023) (finding reasonably conspicuous notice where the notice's "dark grey text contrast[ed] clearly with the white background," it was "displayed directly … below the action button," the webpage was "uncluttered and wholly visible," and the hyperlink appeared in "bright pink font, in contrast to the surrounding gray font"); *Peter v. DoorDash, Inc.*, 445 F. Supp. 3d 580, 586-87 (N.D. Cal. 2020) (finding reasonably conspicuous notice, despite plaintiff's characterization of a notice as "gray-on-gray" because the "text contrast[ed] clearly with the background and [was] plainly readable[,]" the notice appeared close to the sign-up button, the screen was "uncluttered and wholly visible," and the hyperlinks were "both in blue, indicating to users that they are clickable").

In contrast, the limited cases finding a notice to be inconspicuous are readily distinguishable.  For example, in *Chabolla*, this Court held various notices to be inconspicuous where (i) they appeared in a "faint, light grey font"; (ii) "the surrounding text [was] not only larger but also far darker"; (iii) the notice did not appear directly above or below the "Continue" button, "which render[ed] the visual connection between the notice and 'Continue' button less clear"; and (iv) the "textual and organizational design choices … *de*-emphasize[d] references to the Terms and Privacy Policy, rendering them inconspicuous."  2023 WL 4544598 at *4 (emphasis in original). Similarly, in *Berman v. Freedom Fin. Network, LLC*, which this Court relied on in *Chabolla*, the notice was "printed in a tiny gray font considerably smaller than the font used in the surrounding website elements," "the comparatively larger font used in all of the surrounding text naturally direct[ed] the user's attention everywhere else," and the notice was "deemphasized by the overall design of the webpage, in which other visual elements draw the user's attention away from the barely readable critical text."  30 F.4th 849, 856-57 (9th Cir. 2022).

Under well-established precedent, it is clear Plaintiff received reasonably conspicuous notice of the Terms, which included the Arbitration Clause.

**2.**      **The Context of the Transaction Confirms Plaintiff was on Notice of the Terms.**

Plaintiff's creation of a Club Applebee's account contemplated a forward-looking relationship, which naturally required terms and conditions between the parties, such that Plaintiff was on notice of the Terms.  "[T]he majority of the federal cases finding an enforceable sign-in wrap agreement involve continuing, forward-looking relationships." *Sellers*, 73 Cal. App. 5th at 476. This is because "the transactional context is an important factor to consider and is key to determining the expectations of the typical consumer." *Keebaugh*, 100 F.4th at 1019.

Plaintiff's account "registration process[] reflected the contemplation of some sort of continuing relationship" that put her "on notice for a link to the terms of that continuing relationship." *Oberstein*, 60 F.4th at 517 (quotations omitted); *see also Sellers*, 73 Cal. App. 5th at 476-77 (discussing *Meyer v. Uber Techs., Inc.*, 868 F.3d 66, 80 (2d Cir. 2017), where the plaintiff signed up for an Uber account and therefore, under California law, "contemplated some sort of *continuing relationship* [with] Uber … that would require some terms and conditions"). Accordingly, the context of this transaction leaves no doubt Plaintiff was on notice of the Arbitration Clause.

**3.**      **Plaintiff Unambiguously Assented to the Terms.**

Plaintiff unambiguously assented to the Terms, including the Arbitration Clause, by selecting "Create Account."  "A user's click of a button can be construed as an unambiguous manifestation of assent only if the user is explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement." *Berman*, 30 F.4th at 857. "All that is required is that the text of the notice explicitly alert the user that by proceeding to the next page, the user agrees to our Terms of Use." *Kaplan v. Athletic Media Co*., 705 F. Supp. 3d 992, 1002 (N.D. Cal. 2023) (punctuation and citation omitted).

The Notice, which appeared immediately above the "Create Account" button, explained to Plaintiff that "[b]y signing up [she] agree[d] to the Terms of Use." Suarez Decl., ¶ 7.  The language and organization of the page made clear that by selecting "Create Account," Plaintiff agreed to the Terms, including the Arbitration Clause.  This Court has consistently found similarly worded and

Dentons US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
213 623 9300

designed notices to evidence a user's manifestation of assent. *Ghazizadeh v. Coursera, Inc.*, No. 23-cv-05646-EJD, 2024 WL 3455255, at *11 (N.D. Cal. June 20, 2024) (holding a user assented where the notice stated "By creating an account, I accept Coursera's Terms of Service and Honor Code" and the assent manifesting action, clicking the "Sign Up" button, was made clear by the location of the button directly above the notice); *Regan v. Pinger, Inc*., No. 20-CV-02221-LHK, 2021 WL 706465, at *7-8 (N.D. Cal. Feb. 23, 2021) (finding assent where the notice appeared immediately above the "Create Account" button and stated "By registering, I agree to Sideline's Terms and Condition"). Further, despite the "technical mismatch in language, 'the physical proximity of the notice to the register button and the placement of the language in the registration flow ma[d]e clear to [Plaintiff] that the linked terms pertain[ed] to the action [she was] about to take.'" *Lee v. DoNotPay, Inc*., 683 F. Supp. 3d 1062, 1075 (C.D. Cal. 2023) (citing *Meyer,* 868 F.3d at 80).

In short, when she selected "Create Account" immediately after she was notified her creation of an account constituted her assent to the Terms, Plaintiff agreed to the Terms—and the Arbitration Clause.

### B. The Arbitration Clause Covers this Dispute.

The broad scope of the Arbitration Clause unquestionably encompasses this dispute. In determining the scope of an arbitration clause, "courts have recognized the distinction between 'broad' and 'narrow' language." *Concat LP v. Unilever*, *PLC*, 350 F. Supp. 2d 796, 807 (N.D. Cal. 2004). Where an arbitration clause covers "all disputes arising out of or in connection" with an agreement, its scope is broad. *Id*. When this type of language is employed, the arbitration agreement "reaches every dispute between the parties having a significant relationship to the contract and all disputes having their origin or genesis in the contract." *Optimum Prods. v. Home Box Off*., 839 F. App'x. 75, 77 (9th Cir. 2020) (quotations and citation omitted) (stating "factual allegations need only touch matters covered by the contract").

The Terms begin by explaining they govern "access to and use of the websites and online services that [Defendants] operate[] and that link to the[] Terms (collectively, the 'Site' or 'Sites')." Terms, § 1.1. The Arbitration Clause requires all disputes, defined as "any dispute, action, or other

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

NOTICE OF MOTION AND MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO COMPEL ARBITRATION

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

controversy between you and [Defendants] *arising out of or in connection* with these Terms and/or your use of the Site," be resolved by confidential, binding arbitration. *Id.*, §§ 13, 13.3 (emphasis added). In addition to employing broad language, the Arbitration Clause reiterates the term "dispute" is to "be given the broadest possible meaning allowable under law." *Id.*, § 13. Here, each of Plaintiff's claims centers on the assertion Defendants wrongfully charged a "carefully concealed 11 percent 'Service Fee'" to customers placing online orders through Defendants' website and application. Compl., ¶ 6. As a result, this dispute plainly arises out of and is in connection with Plaintiff's use of the Applebee's Site. Further, because Plaintiff's use of the Site, and the services offered therein, are governed by the Terms, her claims also arise out of and in connection with the Terms.

Simply put, given the broad language of the Arbitration Clause and the fact Plaintiff's claims emanate from her use of Defendants' online services, which are governed by the Terms, this dispute is certainly one "arising out of or in connection with [the] Terms and/or [Plaintiff's] use of the Site." Terms, § 13.

### C.    The Arbitration Clause is Valid and Enforceable.

There is no basis to invalidate the Arbitration Clause because any "unconscionability" argument is without merit. Under any unconscionability challenge, Plaintiff bears the burden to demonstrate the clause "is both procedurally and substantively unconscionable." *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260 (9th Cir. 2017). In determining unconscionability, courts employ a "sliding scale" where "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.* (internal citation and quotation omitted).

### 1.    The Arbitration Clause is Not Procedurally Unconscionable.

The Arbitration Clause is not procedurally unconscionable because there is no "oppression or surprise due to unequal bargaining power." *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1000 (9th Cir. 2021). "Oppression occurs where a contract involves lack of negotiation and meaningful choice, [and] surprise [occurs] where the allegedly unconscionable provision is hidden within a ... form." *Kaplan*, 705 F. Supp. 3d at 1004. Factors indicating procedural unconscionability include:

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

1    2    3    4

(1) the amount of time the party is given to consider the proposed contract; (2) the amount and type of pressure exerted on the party to sign the proposed contract; (3) the length of the proposed contract and the length and complexity of the challenged provision; (4) the education and experience of the party; and (5) whether the party's review of the proposed contract was aided by an attorney.

5    *Id*. at 1005.

6    In this case, none of these factors indicate procedural unconscionability.  When Plaintiff

7    chose to create a Club Applebee's account, the Terms were provided in a hyperlink, which directed

8    her to a separate webpage and gave her unlimited time to review the Terms, including the

9    Arbitration Clause.  Further, Plaintiff was not required or pressured into accepting the Terms.

10    Plaintiff decided, on her own volition, to create an account.  By no stretch of the imagination did

11    Defendants pressure Plaintiff to accept the Terms.  Moreover, the Terms, which are relatively short,

12    notified Plaintiff on the first page that they contain "**A BINDING ARBITRATION CLAUSE**

13    **AND CLASS ACTION WAIVER THAT AFFECT [HER] RIGHTS FOR RESOLVING**

14    **DISPUTES WITH US (SECTION 13)**."  Terms, § 1.2.  The referenced section 13 contained the

15    full arbitration agreement, which is not lengthy, is free of legalese and is easy to understand.

16    Additionally, given Plaintiff's ability to register for a Club Applebee's account, she certainly had

17    the capacity to review and understand the Arbitration Clause.  Finally, although at this stage it is

18    unclear whether Plaintiff consulted an attorney in her review of the Terms, she was free to do so if

19    she pleased.  In light of the foregoing, Plaintiff cannot not demonstrate oppression or surprise.

20    Further, despite the adhesive nature of the contract, because "there is no other indication of

21    oppression or surprise, the degree of procedural unconscionability … is low, and the agreement

22    will be enforceable unless the degree of substantive unconscionability is high." *Loewen v. Lyft,*

23    *Inc.*, 129 F. Supp. 3d 945, 956 (N.D. Cal. 2015) (quotations and citation omitted); *Cornejo v.*

24    *Spenger's Fresh Fish Grotto*, No. C 09-05564 MHP, 2010 WL 1980236, at *6 (N.D. Cal. May 17,

25    2010) (noting adhesion contracts are an "inevitable fact of life for all citizens" and "other factors

26    need to be present to render an adhesion contract unenforceable") (quotation and citation omitted).

27    **2.    The Arbitration Clause is Not Substantively Unconscionable.**

28    The Arbitration Clause is not substantively unconscionable because it is more favorable to

- 21 -

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

1   Plaintiff. To be substantively unconscionable, the Terms must be "overly harsh, unduly oppressive,

2   unreasonably favorable or must shock the conscience." *Poublon,* 846 F.3d at 1261 (quotations

3   omitted). Substantive unconscionability is "concerned not with a simple old-fashioned bad bargain

4   but with terms that are unreasonably favorable to the more powerful party." *Id.* It is not the case

5   that "a one-sided contract is [] necessarily unconscionable," unconscionability requires "something

6   more than the absence of mutuality." *Davenport v. Nvidia Corp.*, No. 23-cv-01877-PCP, 2024 WL

7   832387, at *6 (N.D. Cal. Feb. 28, 2024) (quotation and citation omitted) (holding a lack of

8   mutuality combined with a pre-arbitration dispute resolution process was insufficient to render the

9   arbitration provision unenforceable).[5]

10       Under the Terms, both Plaintiff and Defendants are required to arbitrate their claims.

11   Terms, § 13.3. Arbitration is to be conducted by JAMS, a highly regarded arbitration administrator,

12   under its rules, including its Consumer Arbitration Minimum Standards, in Plaintiff's county of

13   residence or Los Angeles, County. *Id.*, § 13.5. Importantly, the Arbitration Clause preserves

14   Plaintiff's right to bring actions in small-claims court, providing an accessible alternative to

15   arbitration for smaller disputes. *Id.*, § 13.2. Further, the only fee to be paid by Plaintiff is a "case

16   management fee which is approximately equivalent to current court filing fees." *Id.*, § 13.6. All

17   other arbitration costs are borne by Defendants. *Id.* Given that this Court has rejected a substantive

18   unconscionability challenge to an arbitration clause that split fees, there is no question the

19   Arbitration Clause is exceedingly fair and, therefore, is not substantively unconscionable. *Lag Shot

20   LLC v. Facebook, Inc.*, No. 21-cv-01495-JST, 2021 WL 2660433, at *5 (N.D. Cal. June 25, 2021).

21       For these reasons, the Arbitration Clause should not be rendered unenforceable based on

22   any unconscionability argument advanced by Plaintiff.

23       **D.**    **Arbitration May not Proceed on a Class-Wide Basis.**

24       Although the issue is for the arbitrator rather than this Court, the Terms contain an

25   unambiguous waiver of any right to proceed as a class action or consolidate claims of more than

26

27   [5] Under well-established precedent, the Terms' class waiver is also not substantively
     unconscionable. *Carter v. Rent-A-Ctr., Inc.*, 718 F. App'x 502, 504 (9th Cir. 2017) (noting *AT&T*

28   *Mobility LLC v. Concepcion*, 563 U.S. 333 (2011), discussed below, foreclosed "any argument that
     a class action waiver, by itself, is unconscionable.").

1    one person.  Terms, § 13.4.  Consistent with Supreme Court precedent, if this issue were to reach

2    the Court (which it should not), the class-action waiver should be upheld and enforced.  *See, e.g.*,

3    *AT&T Mobility LLC*, 563 U.S. at 352 (holding the FAA preempted California judicial rule which

4    required the availability of class-wide arbitration); *Epic Sys. Corp. v. Lewis*, 584 U.S. 497 (2018).

5    **V.    ALTERNATIVELY, THIS CASE SHOULD BE DISMISSED PURSUANT TO FED.
       R. CIV. P. 12(b)(6)**

6

7         **A.    Legal Standard for Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6).**

8         A motion to dismiss pursuant to Rule 12(b)(6) "tests the legal sufficiency of a claim."

9    *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  A complaint "must contain sufficient factual

10   matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*,

11   556 U.S. 662, 678 (2009).  A "threadbare" recitation of the elements of a cause of action does not

12   suffice.  *Id.*  Neither do conclusory allegations or allegations that "merely track[] the language of

13   the statute[s] [themselves], without providing facts to substantiate the claimed legal conclusions."

14   *Ticketmaster L.L.C. v. Prestige Ent. W., Inc.*, 315 F. Supp. 3d 1147, 1175 (C.D. Cal. 2018); *see*

15   *also In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (courts should not "accept

16   as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

17   inferences").  To survive dismissal, Plaintiff must plead sufficient factual content that allows the

18   Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."

19   *Iqbal*, 556 U.S. at 678.

20        In conducting its analysis, the Court is not to assume "the [plaintiff] can prove facts that

21   [she] has not alleged."  *Associated Gen. Contractors of California v. California State Council of*

22   *Carpenters*, 459 U.S. 519, 526 (1983).  Moreover, "[t]he court need not . . . accept as true

23   allegations that contradict matters properly subject to judicial notice or by exhibit."  *Sprewell v.*

24   *Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  "Nor is the court required to accept as

25   true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

26   inferences."  *Id.*  Ultimately, the factual allegations that can be considered "must be enough to raise

27   a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

28

Dentons US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
213 623 9300

NOTICE OF MOTION AND MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO COMPEL ARBITRATION

**B.      Plaintiff Fails to Plausibly Allege a Reasonable Consumer Would be Misled by the Service Fee.**

Plaintiff asserts claims under three separate but closely related California statutes: the UCL, FAL, and CLRA.  The CLRA prohibits "unfair or deceptive acts or practices."  Cal. Civ. Code § 1770.  Similarly, the UCL prohibits "untrue or misleading" statements (Cal. Bus. & Prof. Code § 17200), and the FAL prohibits "untrue or misleading" advertisements.  *Id*. § 17500.  Although the statutes differ slightly, violations of the CLRA, UCL and FAL are all analyzed under the same reasonable-consumer test, which requires a plaintiff to show "members of the public are likely to be deceived" by a defendant's activity.  *Williams v. Gerber Prod. Co*., 552 F.3d 934, 938 (9th Cir. 2008) (internal citation omitted).  The touchstone under this test is "whether the product labeling and ads promoting the products have a meaningful capacity to deceive consumers."  *McGinity v. Procter & Gamble Co*., 69 F.4th 1093, 1097 (9th Cir. 2023).  The reasonable-consumer test requires more than a "mere possibility" that advertising "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner."  *Ebner v. Fresh, Inc*., 838 F.3d 958, 965 (9th Cir. 2016) (quoting *Lavie v. Procter & Gamble Co*., 105 Cal. App. 4th 496, 508 (2003)).  Rather, as the Ninth Circuit explained, the reasonable-consumer test requires a probability "that a ***significant portion*** of the general consuming public or of targeted consumers, ***acting reasonably in the circumstances***, could be misled."  *Id*. (citation omitted) (emphasis added).

Plaintiff's claim that a reasonable consumer would be misled or deceived as to the imposition of the service fee is not plausible.  As Plaintiff alleges, it is undisputed Defendants disclosed the service fee ***before*** Plaintiff—or any other customers—completed their purchases.  Compl., ¶ 25 and Figure 2.  As clearly shown, the imposition of the "Service Fee" is not just disclosed, but customers can see the percentage it represented.  Indeed, everything the customer needed to know to understand what they were being charged for the food product, taxes and fees was readily accessible and prominently displayed at the checkout screen—and the "Service Fee" is clearly separated and delineated from all other fees and taxes.  Compl., ¶ Figure 2.  In other words, customers had full knowledge and disclosure of the 11% service fee ***before*** deciding to complete (or not complete) their purchase.  A reasonable consumer cannot be misled by the addition of a

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

service fee that is clearly and explicitly disclosed prior to completion of his or her order. *Janda v. T-Mobile, USA, Inc.*, No. C 05-03729 JSW, 2009 WL 667206, at *6 (N.D. Cal. Mar. 13, 2009) (statement in cell phone agreement "that the monthly service rate 'excludes taxes and surcharges' … would have alerted Janda that T-Mobile would charge him more than the set monthly fee"); *Wayne v. Staples, Inc.*, 135 Cal. App. 4th 466, 483-84 (2006) ("In light of Staples' clear disclosure of the actual price it would charge its customers for declared value coverage prior to any purchase, the trial court properly concluded any ambiguity in the order form as to the whether the amount charged includes a 'surcharge' or profit for Staples was not misleading or deceptive."); *Searle v. Wyndham Int'l, Inc.*, 102 Cal. App. 4th 1327, 1334 (2002) (affirming dismissal of UCL and FAL claims challenging service fee where 17% service charge was disclosed pre-purchase and the patron had "the freedom to decline the service"); *see also Dimond v. Darden Rests., Inc.*, No. 13 Civ. 5244(KPF), 2014 WL 3377105, at *8 (S.D.N.Y. July 9, 2014) (plaintiff could not state a claim for fraudulent or deceptive practices because the allegedly deceptive 18% service fee added by defendants was "completely and conspicuously indicated on the menu so that each patron was expressly informed as to the cost of dining at the Restaurant prior to voluntarily placing his or her order").

Further, while Plaintiff repeatedly alleges she did not know what "'services' the Service Fee is intended to cover" (Compl. ¶ 28) and was "left unaware exactly what the additional charge is for," (*id.*) Defendants have no obligation to provide that information. Just as the hotel in *Searle* had "no obligation to advise consumers about what it does with the revenue it receives from them" (*Searle*, 102 Cal. App. 4th at 1335), Defendants have no obligation to explain to consumers what is done with the service fee. *Id.* at 1334 ("What a hotel does with the revenue it earns—from either the mini-bar, in-room movies or its room service charges—is of no direct concern to hotel guests."); *see also Quezada v. Franklin Madison Grp., LLC*, No. 19cv2153-LAB (DEB), 2020 WL 5819824, at *5 (S.D. Cal. Sept. 29, 2020) ("As long as the actual price is disclosed and plaintiffs agreed to pay for it, failure to disclose the basis or nature of the markups is not actionable under California's UCL in this case.  What a seller chooses to do with the markup included in the prices buyers pay is of no legitimate concern to the buyers.") (internal citations omitted).  And Defendants have not

1    made "any representations regarding the nature of the Service Fee that can be construed as

2    misrepresentations." *Watson v. Crumbl LLC*, No. 2:23-cv-01770-DJC-CKD, 2024 WL 3010880,

3    at *8 (E.D. Cal. June 10, 2024).

4         In sum, Plaintiff fails to plausibly allege the service fee was likely to mislead a significant

5    portion of the reasonable consuming public because the service fee was ***adequately and fully***

6    ***disclosed*** before any customer completed their purchase.  As Plaintiff's own allegations confirm,

7    she and other customers were armed with information to (1) understand a service fee was being

8    charged, (2) determine the precise amount of the fee by pressing the description box directly next

9    to the service fee at checkout, and (3) avoid any misrepresentations about the nature of the service

10   fee.  Thus, Plaintiff's CLRA (Count 1), FAL (Count 2), and UCL (Count 3) claims fail.

11         **C.    Plaintiff Fails to Otherwise State a Claim Under The CLRA.**

12        The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or

13   practices" involved in "the sale or lease of goods or services to any consumer." Cal. Civ. Code

14   § 1770(a).  Plaintiff's CLRA claim rests entirely on the unfounded notion Defendants have violated

15   Sections 1770(a)(9) and (a)(20) of the CLRA, because, as alleged, the price of the food products

16   on Defendants' website and application included an 11% service fee at checkout.  Compl., ¶ 63.

17   Specifically, Plaintiff claims the Applebee's menu and service fee violate Section 1770(a)(9) and

18   (a)(20) because the service fee is separated from the advertised prices offered for food and drinks

19   on the menu itself.  Compl., ¶ 62.  Plaintiff has failed to state a claim under either section.

20        First, Plaintiff's Section 1770(a)(9) fails under the plain language of the statute.

21   Section 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as

22   advertised." Cal. Civ. Code § 1770(a)(9).  Here, as alleged, Defendants intended to sell the food

23   products and separate delivery services exactly as advertised, with prices listed for each food item,

24   and a clearly separate service fee determined by a fixed percentage of the customer's total order.

25   *See* Cal. Civ. Code § 1761 (CLRA defines "goods and "services" separately, with "services"

26   including "services furnished in connection with the sale or repair of goods.").  Plaintiff was told

27   all of this.

28        Plaintiff's  Section  1770(a)(20)  claim  also  fails.    Section  1770(a)(20)  prohibits

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

NOTICE OF MOTION AND MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO COMPEL ARBITRATION

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

1     "[a]dvertising that a product is being offered at a specific price plus a specific percentage of that

2     price." Cal. Civ. Code § 1770(a)(20). Even assuming *arguendo* that the menu is an

3     "advertisement" (which California courts have held they are not)[6], Plaintiff's attempt to bring the

4     service fee within the scope of the Section 1770(a)(20) fails because the service fee is not an

5     addition to the price of the alleged "product" (i.e., the individual food or beverage item), as the

6     statute prohibits. Rather, Plaintiff takes issue with a "Service Fee" charged by a third-party delivery

7     provider. Section 1770(a)(20) prevents retailers from double-pricing individual products; it cannot

8     be read to encompass separate charges attributable to the provision of ancillary services. Indeed,

9     listing a fee separate from food and beverage prices allows customers the opportunity to fully

10     understand exactly what they are paying for.

11     **D.**     **Plaintiff's Fraudulent Misrepresentation Claim Fails as a Matter of Law.**

12     Rule 9(b) requires a complaint in an action based on misrepresentation to allege all the

13     substantive elements of the fraud. "The elements of a cause of action for fraud in California are:

14     '(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of

15     falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and

16     (e) resulting damage.'" *Kearns v. Ford Motor Co*., 567 F.3d 1120, 1126 (9th Cir. 2009) (quoting

17     *Engalla v. Permanente Med. Grp., Inc*., 15 Cal. 4th 951, 974 (1997)).

18     Plaintiff alleges the advertising and listing of prices on the Applebee's website and

19     application are false, misleading and likely to deceive reasonable consumers because the prices fail

20     to include the 11% service fee. *See* Compl. generally. However, these allegations are belied by

21     other allegations in the Complaint, including screenshots displaying the payment screen of the

22     Applebee's website, which clearly demonstrates each customer ***sees pre-purchase*** that the menu

23     price makes up the Subtotal and that additional taxes and fees, including a separate and distinct line

---

24     [6] *See Holt v. Noble House Hotels & Resort, Ltd*, 370 F. Supp. 3d 1158, 1166 (S.D. Cal. 2019)

25     ("Here, the CLRA does not define 'advertising.' *See* Cal. Civ. Code § 1761. However,

26     § 1770(a)(20) provides some guidance, explaining that advertisements include, but are not limited

    to, 'shelf tags, displays, and media advertising.' Cal. Civ. Code § 1770(a)(20). California Civil

27     Code § 1755 explains that media advertising 'includ[es], but [is] not limited to, newspapers,

    magazines, broadcast stations, billboards and transit ads[.]' Cal. Civ. Code § 1755. Restaurant

28     menus do not fit well within this statutory language. Menus are lists of dishes or offerings that may

    be ordered at a restaurant, not tags, displays, or ads one would find in a magazine or on billboards.")

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

1   item for the "Service Fee," are added along with any "Tip" amount to make up the "Total." *Id*. at

2   Figure 2.  There are no false misrepresentations or knowledge of falsity alleged—nor can there

3   be—because the Complaint clearly shows the payment screen conspicuously displayed the total

4   price, including the service fee, before any purchase could be completed.  *Id.*

5          Plaintiff also fails to adequately plead justified reliance.  To do so, Plaintiff must show

6   (1) actual reliance, i.e., "the matter was material in the sense that a reasonable person would find it

7   important in determining how he or she would act;" and (2) reasonable reliance, i.e., "it was

8   reasonable for the plaintiff to have relied on the misrepresentation." *Hoffman v. 162 North Wolfe*

9   *LLC*, 228 Cal. App. 4th 1178, 1194 (2014).  "[A] plaintiff's particular knowledge and experience

10  should be considered in determining whether the reliance upon the misrepresentation or

11  nondisclosure was justified." *Id.*  "If the conduct of the plaintiff in the light of his own intelligence

12  and information was manifestly unreasonable ... he will be denied a recovery." *Id.* (quoting *Seeger*

13  *v. Odell*, 18 Cal. 2d 409, 414 (1941)).  Here, any consumers who ordered any food product for

14  delivery on the Applebee's website were shown the addition of the 11% service fee ***prior*** to paying

15  for their delivery order.  It would be unreasonable for consumers to fail to review the breakdown

16  of their order prior to completing their purchase.  Thus, Plaintiff cannot establish reliance and

17  cannot maintain a claim for fraudulent misrepresentation.

18      **E.      Plaintiff Fails to Allege the Required Elements to Assert a Claim for Unjust**
                  **Enrichment/Quasi-Contract.**

19

20          Count Five of Plaintiff's Complaint is styled as a claim for "Unjust Enrichment/Quasi-

21  Contract."  *See* Compl. at Count V.  In California, unjust enrichment occurs when a person obtains

22  a benefit he or she may not justly retain because the benefit was received at another's expense.

23  *Unilab Corp. v. Angeles-IPA*, 244 Cal. App. 4th 622, 639 (2016) ("Where a person obtains a benefit

24  that he or she may not justly retain, the person is unjustly enriched.").  California courts have

25  consistently held that "[t]here is no cause of action in California for unjust enrichment." *Walker v.*

26  *USAA Cas. Ins. Co*., 474 F. Supp. 2d 1168, 1174 (E.D. Cal. 2007) (quotation and citation omitted);

27  *City of Oakland v. Oakland Raiders*, 83 Cal. App. 5th 458, 477 (2022) (citation omitted) ("There

28  is no cause of action in California labeled 'unjust enrichment.'"); *Ham v. Hain Celestial Grp., Inc*.,

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

70 F. Supp. 3d 1188, 1191 (N.D. Cal. 2014) ("[U]njust enrichment claim is dismissed because unjust enrichment is not an independent cause of action."). Instead, unjust enrichment is a "general principle, underlying various legal doctrines and remedies," rather than a remedy itself. *Dinosaur Dev., Inc. v. White*, 216 Cal. App. 3d 1310, 1315 (1989) (citation and quotation omitted). Because California law does not recognize Plaintiff's claim for unjust enrichment, there are no facts Plaintiff could allege to support this claim, and it should be dismissed with prejudice.

Plaintiff's claim for "quasi-contract" is also unsuccessful here. A claim for quasi-contract must adequately allege the "receipt of a benefit and [the] unjust retention of the benefit at the expense of another." *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1593 (2008) (citation and quotation omitted). Here, Plaintiff received the benefit of the bargain—the Applebee's food items she wished to purchase, and did purchase. *Comet Theatre Enters., Inc. v. Cartwright*, 195 F.2d 80, 83 (9th Cir. 1952) ("There is no equitable reason for invoking restitution when the plaintiff gets the exchange which he expected."). Plaintiff's own allegations demonstrate she was on notice of the service fee before placing an order. *See, e.g.*, Compl. ¶¶ 25, 26 ("On the final page prior to payment when placing an online delivery order, customers are shown a cost breakdown of their charges" and "[a] small line of text described as "Service Fee" appears"). As such, she cannot prove Defendants retained a benefit through some sort of unjust expense upon her.

**F.      Plaintiff's Complaint Lacks the Specificity Required by Fed. R. Civ. P. 9(b).**

Claims such as those here, which "sound in fraud," are subject to the further heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *See Williams v. Apple, Inc.,* 449 F. Supp. 3d 892, 901 (N.D. Cal. 2020) (citing *Bly-Magee v. California,* 236 F.3d 1014, 1018 (9th Cir. 2001)); *PETA v. Whole Foods Mkt. California, Inc.,* No. 15-cv-04301 NC, 2016 WL 362229, at *3 (N.D. Cal. Jan. 29, 2016) (citation omitted) (noting compliance with Rule 9(b) is required where UCL, FAL, and CLRA claims all "contain an element of fraud"). This means Plaintiff "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *Kearns,* 567 F.3d at 1124. And "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1106 (9th Cir. 2003) (citation omitted). In addition, plaintiffs must specifically describe "what is false or misleading"

and "why." *Williams,* 449 F. Supp. 3d at 901 (citation omitted).

Here, Plaintiff has failed to specify the particulars of her orders, what misrepresentations she relied upon in placing them, and Defendants' specific intent to defraud. Plaintiff does not even specifically allege *when* she allegedly placed an order on the Applebee's website, instead vaguely stating "most recently in December 2023." Compl., ¶ 11. The Complaint further lumps both Dine Brands and Applebee's Restaurants, LLC, together, but fails to specify what either of the Defendants supposedly did that was fraudulent, much less with particularity and with assertions of fact. Plaintiff therefore fails to "inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007) (citation and quotation omitted). Each Defendant has the right to know what it is alleged to have done that is fraudulent. The Complaint does not do that.

## VI.    CONCLUSION

By choosing to create a Club Applebee's account, Plaintiff affirmatively agreed to arbitrate this dispute. The webpage she reviewed provided reasonably conspicuous notice of Defendants' Terms, which included the Arbitration Clause, and made clear her creation of an account constituted assent to the Terms. The Arbitration Clause is broad in scope and plainly encompasses this dispute. Further, the Arbitration Clause is valid and enforceable, and not unconscionable, because there was no oppression or surprise in the contracting process and its terms favor Plaintiff. For the foregoing reasons, Defendants respectfully request the Court compel Plaintiff to arbitrate her claims, as she agreed to do, and stay this action pending the completion of arbitration proceedings. In the alternative, this Court should dismiss the case against Defendants in its entirety, with prejudice, for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DENTONS US LLP
601 SOUTH FIGUEROA STREET, SUITE 2500
LOS ANGELES, CALIFORNIA 90017-5704
213 623 9300

Dated:  October 1, 2024

Respectfully submitted,

DENTONS US LLP


By: */s/ Joel D. Siegel*
    Joel D. Siegel
    Pooja L. Shah
    Brian P. Baggott
    Michael P. Pappas

Attorneys for Defendants
DINE BRANDS GLOBAL, INC. and
APPLEBEE'S RESTAURANTS, LLC

NOTICE OF MOTION AND MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANTS' MOTION TO COMPEL ARBITRATION